## McConnochin and others *v.* Kerr and others.

*(Circuit Court, S. D. New York. February, 1883.)*

SALVAGE—CO-SALVORS.

The receipt by the owner and captain of a vessel of the whole compensation awarded as salvage would necessarily import its receipt for the benefit of all other co-salvors interested in the same service, and so exonerate the owners of the vessel, to which the service was rendered, from any liability to others of the saving crew.

In Admiralty.

On July 14, 1880, about 2 o'clock A. M., the iron steam-ship Pomona, while on a voyage from New York to Montego bay, was attracted by signals from the iron steam-ship Colon, which was lying nearly in her course, and bore towards her. As she approached she was met by a small boat from the Colon, bearing a request from the latter's captain for an interview. The Pomona's captain thereupon went aboard the Colon, and was informed by the latter's captain that he wished to be towed to Fortuna island to repair his machinery. The after crank-pin of the shaft of the Colon's engine was broken, and the columns above the engine; the forward crank-shaft bent; and the condenser and low-pressure cylinder were cracked. The high-pressure engine could have been repaired without outside assistance in about seven days, but the low-pressure engine could not have been at all. The Colon was provided with a full set of sails, and with favorable winds, could have made anchor. She was in the track of vessels going through Crooked Island passage, and could have made

anchor at Castle island, 31 miles off. There was a light easterly wind at the time, with which the Colon could have made about a knot an hour, but there were periods of calm. Fortuna island was the nearest safe anchorage, and was 57 miles distant, and directly behind the Pomona's course. The gales incident to that locality were northers and hurricanes, and the Colon's captain felt that the situation involved danger. The Colon's captain desired to agree with the Pomona's captain for the price of the service, but the latter declined, and it was agreed that the compensation should be left to the owners to adjust. The Colon was of about 2,700 tons, and was tight, staunch, and strong, and in good condition, except her disabled machinery, and well supplied.

The Pomona was of 391 tons, and not calculated for towing; of the value of about $60,000, with a full cargo, value not stated. A hawser was passed from the Colon to the Pomona. The vessels got under way about 4 A. M., and arrived at Fortuna bay about 3:30 P. M. of the same day, without difficulty. They sighted two other vessels on the way; and before reaching Fortuna island the wind had died away and become a dead calm. The Pomona was detained about a day on her voyage. The extra labor imposed on her crew was very light.

About two weeks after the occurrence the Colon reached New York, and was libeled by the owner and captain of the Pomona for salvage. The suit was settled by the payment of $3,000 by the owner of the Colon, and the costs of suit. This sum was received by the owner and captain of the Pomona with the understanding, as between them and the owner of the Colon, that the payment should cover the whole service rendered to the Colon; and it was received in behalf of themselves and all others entitled to share in any salvage reward.

Upon the facts, one-fifth of the sum received is a sufficient compensation for the officers and crew of the Pomona for the services rendered. The Pomona had a crew of 15 officers and men.

*Butler, Stillman & Hubbard,* proctors for libelants and appellants.

*Jas. K. Hill, Wing & Shoudy,* proctors for respondents and appellees.

WALLACE, J. The appellants, members of the crew of the steamship Pomona, filed their libel against Kerr, the owner, and Mahlman, the captain of the steam-ship, to recover their share of $3,025.75, alleged to have been received by Kerr and Mahlman for salvage services rendered by the Pomona to the steam-ship Colon. The district

court dismissed the libel for the reason that the sum received by the appellees was not paid to or received by them for salvage services rendered by the Pomona, but for towage services.

If the payment was received as salvage compensation for the entire service rendered by the Pomona, the libelants are entitled to recover. As is tersely stated by the learned district judge in his opinion, "the receipt of the whole compensation as salvage would necessarily import its receipt for the benefit of all the other co-salvors interested in the same service."

That the service was a salvage service, though of an inferior order of merit, seems very clear. Such was the conclusion of the district judge, and, as will hereafter appear, such was the theory of the appellees and of the owner of the Colon when the former made claim against the Colon for compensation. That the payment received by the appellees was intended to be in full for the services rendered by the Pomona, is not disputed.

The case, then, is narrowed to the single question whether the parties to the payment regarded it as a payment for salvage or as one for towage only. If it was intended to cover towage only, then, of course, the crew of the Pomona have no interest in it, because their rights as salvors were not in controversy and could not be affected by any settlement without their consent, and because neither of the parties to the payment contemplated the adjustment of the rights of the crew.

Whether the parties to the payment regarded it as made for salvage depends upon the force of evidence, which may be briefly stated: About a fortnight after the services were rendered by the Pomona to the Colon, the latter arrived at New York, and a libel was filed against her by the appellees, "for themselves and all others entitled," for salvage. Process was issued, and the Colon was taken into custody by the marshal. Thereafter the owner of the Colon answered the libel. The answer alleged that "the services rendered were only towage, and should not be ranked as salvage services of peculiar merit." The answer also alleged that $1,000 would fairly compensate for the services, and that such sum was tendered and paid into the registry of the court.

Shortly after the filing of the answer, in order to settle the controversy without litigation, negotiations took place between the owner of the Pomona and the owner of the Colon, which resulted in an agreement that a Mr. Dennis, the vice-president of a marine insurance company, should act as arbitrator, and fix the sum to be paid

by the Colon. Informal statements were made to the arbitrator in behalf of both sides, and he made an award stating that he did not regard the service as anything more than in the nature of a towing service, and should consider $3,000 a very liberal compensation, and his decision was to award the sum of $3,000 in full for the service, besides the legal expenses incurred by the Pomona, which he directed to be paid by the owner of the Colon. The terms of the award were complied with by the owner of the Colon, and thereupon a receipt was delivered to the owner of the Colon, entitled in the pending suit between the appellees and the Colon, and signed by the proctors for the libelants in that suit, reciting the payment of $3,025.75 as the amount agreed upon in settlement of the action, exclusive of the fees of the officers of the court, which were to be paid by the claimant.

Mr. Dennis testifies that he understood he was to decide whether the service rendered by the Pomona was a salvage service, as well as the amount of compensation which should be paid; but neither of the parties to the arbitration so testify, and the captain of the Colon, who was present when the arbitration was agreed upon, states that it was agreed that Mr. Dennis should make an award as compensation for the salvage.

Inasmuch as the claim made against the Colon by the appellees was for salvage, and was in behalf of themselves and all others entitled; as the owner of the Colon did not seriously dispute the theory that the service was salvage, but insisted that it "should not be ranked as salvage of peculiar merit;" as the paramount question between the parties to the suit against the Colon was as to the amount to which the libelants were entitled; and as the amount finally paid was paid in settlement of the suit, and was receipted for as so paid by the appellees,—the conclusion is reached that the payment was understood by the parties to it as relieving the owner of the Colon from all further responsibility for the service rendered by the Pomona, and as shifting upon the appellees the duty of satisfying all others who might be entitled to a share in the reward. If this was the contemplation of the parties it would be manifestly unjust to subject the owner of the Colon to liability to the appellants; and yet such would be the result if the conclusion of the district court should be approved, because the service was, in fact, a salvage service.

The circumstance that the arbitrator incidentally decided that the service rendered by the Pomona was only in the nature of a towage

service, is not controlling. The real inquiry is, what did the parties to the payment understand it was intended to satisfy? If they believed the payment to be the reward of a salvage service, and as such was to include the claims of every person entitled to share in the reward, then the appellees received it with the obligations which that understanding impressed upon the transaction. The only importance of the arbitrator's decision consists in the effect it may have produced upon the understanding of the parties. If it led them to suppose that the crew of the Pomona had no interest in the adjustment, then the decision was controlling; otherwise, not. If, notwithstanding, they understood that the rights of the crew were represented by the owner and captain, the libelants in the action, and that the owner of the Colon was to be absolved from all further responsibility for the services rendered, whatever their nature may have been, the decision of the arbitrator was not of the least importance. It is quite evident that, whatever the arbitrator may have thought, neither of the parties to the arbitration regarded the services as mere towage services. What the parties believed is apparent from the statements in their pleadings in the pending action, and the recitals in the receipt by which the action was acknowledged to be satisfied. Moreover, the sum awarded was utterly inconsistent with the theory of a mere towage reward.

The question whether the crew had any claim growing out of the service, was not suggested by the parties, or considered by the arbitrator. As the crew could not be bound by his decision, and as he was to decide what compensation should be paid for the whole service rendered, and as the paramount object of the arbitration was that this decision should exonerate the owner of the Colon from the claim for salvage made in their libel by the appellees, the presumption is cogent, if not irresistible, that both parties intended that the latter should be exonerated completely; and if, incidentally, that should require the satisfaction of the claims of the crew, that liability should rest upon the appellees.

The large compensation awarded seems to have been given upon the theory that, although the value of the Pomona's services to the Colon was of great value to the latter, in view of the exigency of her situation, the efforts of the Pomona involved no appreciable danger, hardships, or labor to herself or to her crew; nothing but the delay of a day, with its attendant expense, and the risk assumed by a deviation on her voyage. She probably sustained the chance of loss by the derangement of her business engagements which a day's delay

might cause; and this seems to have been estimated as an element of the compensation to which she was entitled. The extra labor imposed on the crew was quite inconsiderable.

Upon all the facts, one-fifth of the whole salvage will adequately reward the officers and crew. The decree is that $600, with interest at 6 per cent. from October 4, 1880, be deposited in the registry of the court, to be distributed to the officers and crew in the proportion their monthly wages bears to the whole monthly pay-roll. The libelants are entitled to costs of the appeal, and in the district court.